(No. 50216.-)

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee,
v. GEORGE REHBEIN, Appellant.

*Opinion filed December 4, 1978.*

Ralph Ruebner and James Geis, Deputy Defenders, and Kathy M. Morris, Assistant Appellate Defender, of the Office of the State Appellate Defender, of Chicago, for appellant.

William J. Scott, Attorney General, of Springfield, and Bernard Carey, State's Attorney, of Chicago (Donald B. Mackay, Assistant Attorney General, of Chicago, and Lee Hettinger, Iris E. Sholder, and Mary C. Shropshire,

Assistant State's Attorneys, of counsel), for the People.

MR. JUSTICE RYAN delivered the opinion of the court:

George Rehbein was convicted of the offenses of deviate sexual assault and unlawful restraint (Ill. Rev. Stat. 1977, ch. 38, pars. 11—3, 10—3) by a jury in Cook County in February 1976. The appellate court affirmed the conviction. (54 Ill. App. 3d 93.) That court held that the prosecution had erred in its cross-examination by commenting on the accused's silence when he had been interrogated by the police but held that the error was harmless beyond a reasonable doubt. We do not reach the issue of harmless error. The issue we decide is whether a prosecutor's alleged reference to pretrial silence during cross-examination, in the context of clearly proper impeachment by contradictory statements, was an impermissible comment on constitutionally protected silence. We hold that the cross-examination in this case was not a comment on constitutionally protected silence and affirm the appellate court.

At trial, the complainant testified she was sexually assaulted and kidnapped on a rainy morning in August of 1975. As she waited for a bus, a copper-colored car drove up and the driver, identified as the defendant, waved to her. Thinking the driver was her neighbor, the complainant entered the car; immediately realizing she was mistaken, she told the driver she did not need a ride. The driver disregarded this statement and drove to a secluded area under a viaduct. The complainant attempted escape but failed. She was then threatened, disrobed, and sexually assaulted. The driver had no weapon. After further threats, complainant told the driver that she lived alone and that he could do anything he wanted to her at her house if he did not hurt her; the driver accepted this offer and drove toward the woman's house. At a red light she jumped from

the car and screamed; the driver held her arm, hit her, and then threw her purse out of the car. She noted the car's license plate.

A police officer testified regarding two conversations he had with the defendant on the morning of the assault. One conversation was by phone; the other, face to face. The officer phoned the defendant, identified himself, and explained that the license plate registered to defendant's car had become the subject of an investigation. The officer asked the defendant about the license plates and the defendant said the plates were on a blue Buick that was in his garage, inoperable and undriven for some time. In response to another question the defendant said he had been home all night. The officer subsequently went to defendant's house, explained his purpose again, and asked to see the car, since the defendant's description of the car did not fit the complainant's. The officer went to the garage with defendant's wife, found that the car was not blue but copper-colored, that it was covered with raindrops, indicating that it was not inoperable but that it had been recently driven. He returned immediately to the house, told the defendant of the discrepancy, and informed him of his constitutional rights. At this point the defendant "denied any knowledge of being involved in any type of situation" and asked to call an attorney. Nothing further was said.

At the trial, the defendant's testimony directly contradicted that of the complainant and the police officer. Defendant acknowledged that he had in fact picked up the complainant but only after she waved at him. After riding in the car for a few moments she initiated the sexual contact and then asked for money in exchange. Defendant proceeded to the complainant's apartment at her suggestion. However, when he said that he was out of work and had no money she exclaimed that he would be sorry and left the car.

This appeal focuses on the cross-examination of the defendant. He flatly denied making the phone statements to the officer about his car, and his being home all night. In the midst of admittedly proper impeachment questions, and a lengthy cross-examination as to whether the defendant went out to the police car to talk to the complainant, the prosecutor explicitly asked the defendant several times whether the defendant had earlier told the police officer the story he was now telling at trial, namely, that the girl waved to him first and that she had solicited him. A major portion of this particular colloquy is quoted in the appellate opinion below. There was no objection by defense counsel at trial to any of these questions. Defendant does not contend on appeal that the prosecution erred in asking him about his allegedly contradictory statements; the issue is the references to what defendant did not say. The parties in this court have referred to the prosecutor's conduct as a comment on silence. In the sense that reference was made to the fact that the defendant had not previously told the officers the story he told on the witness stand, it is a comment on silence, but to the extent his testimony conflicts with what he told the officer, the cross-examination did not amount to a comment on silence.

We note that the defendant's failure to object at trial to the prosecutor's remarks in this case might well have waived the issue for purposes of appeal. However, because of the importance of the substantive issue of law involved here and the great number of cases reaching the appellate courts on this issue we have elected to decide the question of the prosecutor's remarks.

A brief historical background illustrates the development of the issue on appeal—comments on silence. In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the Supreme Court decided that certain warnings must be given to a person at the time of

his arrest. One of those warnings, of course, was the right to remain silent. Footnote 37 of that opinion expressly said that the prosecution may not use at trial the fact that the defendant stood mute and claimed his privilege in the face of accusation. (384 U.S. 436, 468 n.37, 16 L. Ed. 2d 694, 720 n.37, 86 S. Ct. 1602, 1624-25 n.37.) *Harris v. New York* (1971), 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643, followed *Miranda* but allowed use of inadmissible evidence for impeachment purposes. According to *Harris* the defendant's protected statements, inadmissible on direct, may be used for impeachment if they are directly contradictory to trial testimony and if they indicate that the defendant is perjuring himself. Use of post-arrest silence for impeachment was not discussed in *Harris*. Four years after *Harris* the court ruled in *United States v. Hale* (1975), 422 U.S. 71, 45 L. Ed. 2d 99, 95 S. Ct. 2133, that a defendant's silence could not be used in the Federal courts even as impeachment. *Hale* invoked the court's supervisory power, and did not rule on a matter of constitutional rights. The *Hale* court stated that an evidentiary balancing test was to be used; if there were alternative explanations for the defendant's silence, that silence was not sufficiently probative to justify reference to it. One year later, *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, barred a State prosecutor's reference to a defendant's silence even for impeachment. Basing its reasoning on the fourteenth amendment's due process guidelines, rather than merely on the fifth amendment's privilege against self-incrimination, the court said that *Miranda* gives implicit assurance that silence will not be used against the defendant. Post-arrest silence is insolubly ambiguous. *Doyle* thus goes beyond the evidentiary test of *Hale* and establishes a *per se* constitutional bar to the use of silence. See generally Note, *Impeaching a Defendant's Testimony by Proof of Post-Arrest Silence: Doyle v. Ohio*, 25 Clev. St. L. Rev. 261

(1976); Comment, *Evidence—Doyle v. Ohio: Use of Defendant's Silence for Impeachment at Trial,* 8 Loy. Chi. L.J. 438 (1977).

In Illinois, two somewhat contradictory lines of cases emerged from the pre-*Miranda* Illinois case of *People v. Pfanschmidt* (1914), 262 Ill. 411. One line allowed use of silence in the face of accusations as an "adoptive admission" (*People v. Jones* (1970), 47 Ill. 2d 135); the other severely restricted the use of silence (*People v. Lewerenz* (1962), 24 Ill. 2d 295). The adoptive admission cases have now been discredited by *Miranda.* 3 J. Wigmore, Evidence sec. 821, at 309 n.3 (Chadbourn rev. ed. 1970).

*People v. Queen* (1974), 56 Ill. 2d 560, is a post-*Miranda* case with facts somewhat similar to ours. Queen testified at his trial that his intention had been to interrupt a robbery in which he was participating by calling the police when he could momentarily escape detection by his fellow robber. No opportunity for this call presented itself. During cross-examination, and again briefly in closing arguments, the prosecutor referred to the defendant's failure to actually call the police. This court held that reference to the defendant's failure to call the police was not a comment on silence, but an impeachment of credibility by contradiction, since he had not remained silent after his arrest but had talked to the police officers.

In *Doyle v. Ohio* the Supreme Court, in a footnote, stated an exception to the strict ban on reference to silence, an exception which seems to be in accord with the holding in *Queen* and applicable to the case before us:

> "It goes almost without saying that the fact of post-arrest silence could be used by the prosecution to contradict a defendant who testifies to an exculpatory version of events and claims to have told the police the same version upon arrest. In that situation the fact of earlier silence would not be used to impeach the

exculpatory story, but rather to challenge the defendant's testimony as to his behavior following arrest." 426 U.S. 610, 619 n.11, 49 L. Ed. 2d 91, 98 n.11, 96 S. Ct. 2240, 2245 n.11.

In the case before us we have a prosecutor's reference on cross-examination to the defendant's pretrial silence in direct connection with that prosecutor's admittedly proper impeachment of defendant's trial testimony with inconsistent pretrial statements. We made no distinction between the defendant's silence before or after *Miranda* warnings were given. In the context of the defendant's silence, the entire conversation between the defendant and the police officer must be viewed as a whole. In the instant case the prosecutor laid a foundation for the impeachment by eliciting from the police officer the defendant's pretrial statements. The prosecutor then asked the defendant if he had not, in fact, said to the police officer that the car was blue and inoperable, and that he had not been out all night. It was in the context of these questions that the prosecutor referred to the defendant's failure to tell the police his now totally contradictory exculpatory story— the girl was a prostitute and waved to him first and solicited him.

In *United States v. Mireles* (5th Cir. 1978), 570 F.2d 1287, the defendant was convicted of possession of marijuana with intent to distribute. This case is factually similar to ours. At trial, the defendant said he did not know of the marijuana concealed behind the paneling in a van he was driving and that he was merely moving furniture for another. A border agent testified that before arrest the defendant said the furniture was his own and after arrest said that he had borrowed the truck from his uncle. The defendant apparently said nothing about moving furniture for another until the trial. The *Mireles* court reasoned that the defendant's silence was not at issue when the prosecutor asked the defendant if he had told his

exculpatory story to the agents. The prosecutor was concerned as to inconsistencies; failure to mention the other person, either before or after arrest, as against defendant's trial testimony. The prosecutor's questions and argument, according to the court, "were not an impeachment by silence, as in *Doyle,* but merely an effort to impeach by prior statements that were inconsistent with defendant's testimony at trial." (570 F.2d 1287, 1293.) We find the reasoning of *Mireles* helpful. Accord, *Twyman v. Oklahoma* (10th Cir. 1977), 560 F.2d 422 (comment on omission in purportedly complete statement made to police); *United States v. Mitchell* (8th Cir. 1977), 558 F.2d 1332 (when confronted with fact of false statement given to officers, defendant remained silent); *United States v. Conlin* (2d Cir. 1977), 551 F.2d 534 (evidence allowed to dispute defendant's statement that he had told exculpatory story to officers); *United States v. Davis* (5th Cir. 1977), 546 F.2d 617, 622 n.4 (before arrest and *Miranda* warnings defendant ran and shouted to officers that they might as well shoot but made no exculpatory statement); *United States v. Riggs* (4th Cir. 1976), 537 F.2d 1219 (repeated comments about stolen money supported reference to accompanying silence).

Viewing the prosecutor's comments here in light of *Queen* and the *Doyle* footnote, and supported by the authority and reasoning of several Federal cases, we conclude that the prosecutor's references to George Rehbein's pretrial silence in this case were not impermissible comments on silence. The prosecutor's reference to silence in the context of proper impeachment by inconsistent statements was not a *Doyle* violation. We therefore affirm the appellate court.

*Judgment affirmed.*