THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* GEORGE T. EARL *et al.*, Defendants-Appellants.

Third District    Nos. 79-522, 79-350 cons.

Opinion filed October 24, 1980.—Supplemental opinion filed on denial of rehearing November 26, 1980.

Robert Agostinelli and Michael Filipovic, both of State Appellate Defender's Office, of Ottawa, for appellants.

John D. Sloan, State's Attorney, of Aledo (John X. Breslin and Kenneth A. Wilhelm, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:

Defendants George Earl and David Wilken were charged by information with burglary. After a jury trial in the circuit court of Mercer County, both defendants were found guilty as charged and sentenced to respective terms of imprisonment of five and seven years. Defendants appeal those convictions, sentences, and an order to make joint restitution for the property involved.

During the early morning of December 12, 1978, the Town and Country Bowling Alley in Aledo, Illinois, was burglarized. The front of the bowling alley's safe was "peeled off" and 17 to 18 hundred dollars was removed. The stolen money included two $100 bills, eight paper-clipped packets of 25 one-dollar bills, and approximately $150 in rolled silver coins. "Cement" from the safe was widely scattered and liquor and vending machine proceeds were also removed. The occurrence took place sometime between midnight and 5 a.m., when the establishment was secured for the night.

Later that day, Aledo Police Chief Hugh McAtee obtained a search warrant for defendant Earl's automobile. At approximately 5 p.m., the vehicle was observed parked at a local restaurant, and defendant Wilken was apparently in the driver's seat and Earl nearby when the warrant was executed. Mercer County Sheriff Norman Thirtyacre observed some white cement-like particles on the front passenger seat of the automobile and placed them in an envelope. Earl was then arrested pursuant to an arrest warrant and Wilken complied with a police request to accompany them to the police station. After they arrived at the station, the vehicle was searched. Found in the glove compartment were 100 single dollar bills, paper-clipped in packets of 25 bills, wrapped rolls of coins, folded bills, and loose change. Wilken was subsequently arrested and was found to be carrying Earl's wallet which contained $186.56, including one $100 bill. Wilken stated that part of the sum was his. A lab report later revealed the particles seized from Earl's automobile came from the bowling alley safe or from another source of natural safe insulation having the same properties.

During the direct examination of Chief McAtee, the following exchange occurred between prosecutor and witness:

"Q. Now, Mr. McAtee, did Mr. Wilken or Mr. Earl, either one or both, give you or anybody else to your knowledge any explanation why this money was in the glove compartment?
A. No.

Q. Was anything said by either one of them why that money was in the car or in the glove compartment?

A. Not that I recall.

Q. Did either one of them say anything to you giving you an explanation of why they had the money?

A. No, not that I can recall. Neither one of them made any explanation for the money in the glove compartment to me.

Q. In other words, Mr. Earl did not say, 'Well that money belongs to so and so or it got in there under these circumstances'? Did he give any explanation whatsoever?

A. Not to me, he didn't.

Q. Did Mr. Wilken give any explanation whatsoever as to why the money was in the glove compartment?

A. No."

Defendants contend that the foregoing exchange violated their fifth amendment privilege against self-incrimination and their fourteenth amendment guarantee of due process of law as it established their silence regarding the subject currency. The People respond the exchange was an entirely proper method of establishing that defendants' possession of the currency was "unexplained."

The significance of unexplained possession of the currency arises from the Illinois Pattern Jury Instruction, Criminal, No. 13.21, tendered to the jury in this cause:

> "If you find that the defendant had exclusive possession of recently stolen property, and there was no reasonable explanation of his possession, you may infer that a defendant obtained possession of the property by the commission of a burglary."

Defendants' contention that the use of the instruction is violative of their constitutional guarantee of due process of law has previously been rejected. *People v. Housby* (1980), 82 Ill. App. 3d 537, 403 N.E.2d 62, *appeal allowed* (1980), 81 Ill. 2d 585; *People v. Ward* (1980), 80 Ill. App. 3d 253, 399 N.E.2d 728, *appeal allowed* (1980), 81 Ill. 2d 598; *People v. King* (1979), 78 Ill. App. 3d 879, 397 N.E.2d 905, *appeal denied* (1980), 79 Ill. 2d 633.

■■ In *Miranda v. Arizona* (1966), 384 U.S. 436, 468 n.37, 16 L. Ed. 2d 694, 720 n.37, 86 S. Ct. 1602, 1624-25 n.37, the Supreme Court stated:

> "In accord with our decision today, it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation. The prosecution may not, therefore, use at trial the fact that he stood mute or claimed his privilege in the face of accusation. [Citations.]"

Without reaching the question of constitutionality, the court later invoked

its supervisory power in ruling that a defendant's silence could not be used as impeachment under circumstances where

> "* * * the respondent's silence during police interrogation lacked significant probative value and that any reference to his silence under such circumstances carried with it an intolerably prejudicial impact." (*United States v. Hale* (1975), 422 U.S. 171, 179, 45 L. Ed. 2d 99, 107, 95 S. Ct. 2133, 2138.)

One year later, the court reached the constitutional question in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. Basing its decision on fourteenth amendment due process guidelines, the court held the use of silence for impeachment purposes was impermissible and noted:

> "Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these Miranda rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested. See United States v. Hale, U S , at 177, 45 L. Ed. 2d 99, 95 S Ct 2133. Moreover, while it is true that the Miranda warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings. In such circumstances, it would be fundamentally unfair and a deprivation of due process to allow the arrested person's silence to be used to impeach an explanation subsequently offered at trial." (*Doyle v. Ohio* (1980), 426 U.S. 610, 617-18, 49 L. Ed. 2d 91, 97-98, 96 S. Ct. 2240, 2244-45.)

While the progression of law concerning the use of a defendant's silence has developed around attempts at impeachment, we find the above principles to be equally applicable to the direct introduction of such evidence. *E.g., People v. Hockaday* (1979), 69 Ill. App. 3d 294, 387 N.E.2d 409; *People v. Upshire* (1978), 62 Ill. App. 3d 248, 379 N.E.2d 38; *People v. Deberry* (1977), 46 Ill. App. 3d 719, 361 N.E.2d 632.

■■ Applying these principles to the case at bar, we find the introduction of testimony from Chief McAtee that the defendants offered no exculpatory statements concerning the subject currency was fundamentally unfair and a deprivation of due process of law. As we so find, we do not reach the question of whether the introduction of the testimony violated defendants' privilege against self-incrimination as well. While defendants failed to object at trial to the improper questioning nor assign the questioning as error in their post-trial motions, we note that *Doyle* "goes beyond the evidentiary test of *Hale* and establishes a *per se* constitutional bar to the use of silence." (*People v. Rehbein* (1978), 74 Ill. 2d 435, 440, 386 N.E.2d 39, 41.) We therefore recognize the matters of which defendants complain as plain error. *E.g., People v. Green* (1979), 74 Ill.

2d 444, 386 N.E.2d 272; *People v. Beller* (1979), 74 Ill. 2d 514, 386 N.E.2d 857.

■■ The People contend that any error which resulted from the admission of Chief McAtee's testimony was in any case harmless. This conclusion is based on the premise that if the colloquy had not occurred the jury would have necessarily been left with the same impression, as no explanation of possession of the currency was ever offered. This premise equates the lack of explanation at trial to the lack of explanation after arrest. The jury could easily have concluded defendants had an obligation to offer an explanation of their possession of the currency after their arrest. We further note that, in addition to the above equation and the potential for prejudice in cases of this nature (see *United States v. Hale* (1975), 422 U.S. 171, 180, 45 L. Ed. 2d 99, 107, 95 S. Ct. 2133, 2138), the convictions at bar were obtained by use of an inference based on circumstantial evidence. At the time the search warrant was executed, the subject currency was in the glove compartment of a vehicle whose owner was not in the automobile and whose assumed driver was not the owner. Before a Federal constitutional error can be held harmless, a court must be satisfied beyond a reasonable doubt that the error did not contribute to a defendant's conviction (*Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824). We cannot say beyond a reasonable doubt that, given the cumulative circumstances at bar, we are so satisfied. Thus we must find the *Doyle* violation herein constitutes reversible, rather than harmless, error.

Accordingly, the judgments of the circuit court of Mercer County are reversed and this cause remanded for further proceedings consistent with our views expressed herein.

Reversed and remanded.

BARRY and STENGEL, JJ., concur.

SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE STOUDER delivered the opinion of the court:
Defendant David Wilken has filed a petition for rehearing requesting that we reach the question of whether the evidence adduced at trial was sufficient to establish his guilt beyond a reasonable doubt. In view of the mandate of the supreme court in *People v. Taylor* (1979), 76 Ill. 2d 289, 391 N.E.2d 366, that this question be addressed when raised and an

appellate court reverses a criminal conviction and remands the cause for a new trial, we now consider this issue.

■■ Defendant Wilken challenges the sufficiency of the circumstantial evidence establishing his participation in the burglary at bar. We have considered the evidence presented at trial and hold that the jury could have properly found defendant Wilken guilty of this offense. In so holding, we protect defendant Wilken's constitutional privilege against double jeopardy and in no way imply a finding as to his guilt which would be binding on the trial court on remand.

In accordance with the views expressed in our original and supplemental opinions, the judgment of the circuit court of Mercer County is reversed, this cause is remanded for further proceedings in that court, and the petition for rehearing is denied.

Reversed, remanded, and petition for rehearing denied.