THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LARRY JOE McFARLAND, Defendant-Appellant.

Third District    No. 80-167

Opinion filed February 4, 1981.—Rehearing denied March 9, 1981.

Robert Agostinelli and Karen Szpajer, both of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Keefe, State's Attorney, of Rock Island (John X. Breslin and Gary F. Gnidovec, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE STOUDER delivered the opinion of the court:
Defendant, Larry Joe McFarland, was charged with the offense of

murder. Following a jury trial in the circuit court of Rock Island County, defendant was acquitted of murder but convicted of voluntary manslaughter and sentenced to a determinate term of 14 years in the Department of Corrections.

During the early evening of September 5, 1979, David Mewes was fatally stabbed in the abdomen with a butcher knife. As defendant has admitted he was responsible for this act and has not challenged the sufficiency of the evidence, we shall recite only those facts which are germane to the four issues he presents for appellate review.

The first issue presented for review is whether the trial court erred in refusing to strike the testimony of the pathologist who performed the autopsy on the victim, as his identification of Mewes was based on a hospital identification band. Defendant premises this assignment of error on the characterization of the identification band as hearsay and inadmissible as a business record.

In *People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171, a testifying physician based his opinion, in part, upon medical records compiled by others who did not testify and which would normally not have been admitted into evidence. After citing the advisory committee's note to Rule 703 of the Federal Rules of Evidence (28 U.S.C.A. R. 703, at 503-04 (1975)) which mentioned, *inter alia*, the expenditure of substantial time in producing and examining various authenticating witnesses, the court stated:

> "If such reports are of a type customarily utilized by the medical profession, then these reports may be used as factors by an expert in the determination of his opinion as to an accused's sanity even though the reports are not admitted into evidence. The restriction that these materials be commonly used by the medical profession attributes a high degree of reliability to them. [Citations.]" *People v. Ward* (1975), 61 Ill. 2d 559, 568, 338 N.E.2d 171, 177.

■■ A hospital identification band is certainly customarily utilized by the medical profession and is thus attributed a high degree of reliability. Considering this and the fact that reports may be used in an expert determination of sanity (*People v. Ward*) and in other situations (see *Montefusco v. Cecon Construction Co.* (1979), 74 Ill. App. 3d 319, 322-24, 392 N.E.2d 1103, 1105-06), we hold that a hospital identification band may be similarly utilized as the basis of identification testimony. *People v. Ransom* (1976), 65 Ill. 2d 339, 357 N.E.2d 1164, cited by both litigants, is inapposite to our determination as the testimony therein related to a chain of custody issue rather than a hearsay identification problem.

■■ The second issue presented for review is whether defendant was denied his constitutional right to a fair trial by the comments of the prose-

cutor in closing argument. Before turning to this issue, we first consider the People's contention that this issue has been waived even though a nonspecific, oral post-trial motion was made by defendant. While agreeing that the requirement that a written post-trial motion specifying the grounds for a new trial is waived when a defendant makes a nonspecific oral motion for a new trial which is not objected to by the People (*People v. Whitehead* (1966), 35 Ill. 2d 501, 221 N.E.2d 256), they argue that a specific objection during trial is still necessary to preserve the error for review. We agree with the State's position. The general oral post-trial motion may obviate the necessity of a specific written motion (*People v. Redmond* (1979), 73 Ill. App. 3d 160, 390 N.E.2d 1364), but it does not eliminate the need for timely objection to claimed erroneous matter occurring during the course of the trial.

In the case at bar, defendant twice interposed objections to parts of the People's closing argument but only one assignment of error raised on this appeal relates to those objections. However, the trial court at no time had the remaining 12 allegedly improper comments brought to its attention by timely objection. Under these circumstances we find consideration of the propriety of the comments to which no objections were interposed has been waived.

While not raised by defendant, we note that Supreme Court Rule 615(a) provides a limited exception to the waiver rule. We may take notice of errors appearing upon the record which deprive an accused of substantial means of enjoying a fair and impartial trial (*People v. Burson* (1957), 11 Ill. 2d 360, 143 N.E.2d 239) or in criminal cases in which the evidence is closely balanced (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856). Our review of the record does not indicate the existence of either of these situations and we therefore limit our review of this issue to the error preserved at trial and raised on appeal.

During closing argument, the People made the following statement:

> "Again, when you don't have facts you start saying: well, what didn't he do? I'll give you an example. Is there any dispute that Larry McFarland touched that knife? Is it so hard to believe that he walked to a kitchen drawer and pulled out a butcher knife. Don't kitchen drawers keep butcher knives? Is that so hard to believe? His fingerprints weren't on the knife, but he tells you he handled it."

Defendant had not stated that he handled the knife; rather, he testified that he grabbed the victim's hand by the wrist and then put him in a bear hug, whereupon the wound was administered. While the People's misstatement of the evidence was improper, we do not find, in view of the totality of the evidence, that the remark influenced the result of this cause or that the verdict could have been otherwise had the misstatement been

avoided. We therefore decline to reverse the judgment on this basis. *People v. Koshiol* (1970), 45 Ill. 2d 573, 262 N.E.2d 446, *cert. denied* (1971), 401 U.S. 978, 28 L. Ed. 2d 329, 91 S. Ct. 1209.

■■ The third issue presented for review is whether defendant was denied his constitutional right to a fair trial by the People's reference to his post-arrest silence. The People again contend that this issue has been waived for want of objection at trial. In accord with our discussion of this contention in conjunction with the previous issue, we find timely objection was not made. A reference to post-arrest silence may well deprive an accused of substantial means of enjoying a fair and impartial trial and therefore we recognize this issue as a matter of fundamental fairness. See *People v. Green* (1979), 74 Ill. 2d 444, 450-51, 386 N.E.2d 272, 275.

Defendant was arrested within an hour of the homicide by police officers who were patrolling the area. He matched descriptions given by the victim and a witness who saw an individual pass the victim and proceed through her yard. After his arrest, defendant told the police that he did not know the victim and had never been in the apartments where the incident took place. He further denied having been in a fight with, or stabbing, anyone. At trial, defendant testified that he met the victim at a tavern and that Mewes had invited him to come to his apartment so that he could change clothes before returning to the tavern together. Defendant had been drinking, continued to do so after arriving at the apartment, and ultimately fell asleep on a couch. When he awoke, he found the victim, who was dressed in his underwear, had apparently unzipped his pants and was fondling him. Defendant then pushed Mewes, told him he was going to beat his head in, and stood up. Mewes then stood up and swung at defendant with a butcher knife, whereupon defendant pulled Mewes into a bear hug while holding him by the wrist. In so doing, the insertion occurred.

Defendant admitted that he had lied to the police after his arrest both during direct and cross-examination. During cross-examination, the People established that defendant's discovery response of January 4, 1980, indicated he might raise the affirmative defense of intoxication, and it was not until January 7, 1980, the first day of trial, that a response to additional discovery indicated that he might raise the affirmative defense of self-defense. During closing argument, the People then argued that defendant was not telling the truth and, among other statements, added:

> "What is amazing in this case is the persistent—since Monday of this week, January 7, that's when his answer comes in for self-defense. For four months he sat in jail and said, 'I didn't do it.' Wasn't at the crime scene, wasn't anywhere. Now he's got to come up with a defense for you people because we know he's there now.

* * *

I suggest to you Larry McFarland has sat here and again lied to you yesterday. But it shouldn't shock you or shouldn't surprise you, because he's been lying since September 5."

After the development of the issue of comments on silence (see *People v. Earl* (1980), 89 Ill. App. 3d 980, 984, 412 N.E.2d 645, 647), the Supreme Court, in *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, established a *per se* constitutional bar to the use of silence for impeachment. The People did not, however, refer to defendant's silence after his arrest as defendant did not exercise his right to remain silent; rather, they referred to his subsequent failure to tell the police his present, totally contradictory, exculpatory explanation of the incident. In *People v. Queen* (1974), 56 Ill. 2d 560, 310 N.E.2d 166, the court found that a reference to the defendant's failure to telephone the police, after he testified that he planned to do so to thwart a robbery, was not a comment on silence but rather on impeachment of credibility by contradiction as he had not remained silent after his arrest.

Following *Queen* and *Doyle*, the court in *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39, *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843, held the People's reference to the accused's pretrial silence in the context of proper impeachment by inconsistent statements was not a *Doyle* violation. In *Rehbein*, the accused had told police that a subject vehicle had long been inoperable and that it had been at his home at the time of the deviate sexual assault of which he was accused. At trial, he offered the wholly inconsistent story that he had picked up the complainant but asserted that she had initiated the sexual conduct and then requested money. The court noted:

"The parties in this court have referred to the prosecutor's conduct as a comment on silence. In the sense that reference was made to the fact that the defendant had not previously told the officers the story he told on the witness stand, it is a comment on silence, but to the extent his testimony conflicts with what he told the officer, the cross-examination did not amount to a comment on silence."

*People v. Rehbein* (1978), 74 Ill. 2d 435, 439, 386 N.E.2d 39, 40-41.

Two years later, the supreme court considered a situation where an accused told police he had stolen a vehicle from a different location than that which he recalled at trial. During cross-examination, the accused was questioned as to his failure to tell the police the same story he told the jury. In considering whether a *Doyle* violation had occurred, the court stated:

"*Doyle* bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of

silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all. [Citations.]

\* \* \*

We conclude that *Doyle* does not apply to the facts of this case. Each of two inconsistent descriptions of events may be said to involve 'silence' insofar as it omits facts included in the other version. But *Doyle* does not require any such formalistic understanding of 'silence,' and we find no reason to adopt such a view in this case." *Anderson v. Charles* (1980), ___ U.S. ___, ___, 65 L. Ed. 2d 222, 227, 100 S. Ct. 2180, 2182.

We believe that where there has been a change in the account of the events or his conduct by the defendant at the time of his arrest and that offered at trial, comments on the length of time which ensued between the accounts is appropriately considered as part of the impeachment permitted. Again it is not judicially sanctioned silence which is being considered but rather the effect that time may have had on the different *accounts*.

Considering next the use of defendant's discovery responses as tools of impeachment, Supreme Court Rule 413(d) (Ill. Rev. Stat. 1977, ch. 110A, par. 413(d)) requires the disclosure of any defenses a defendant intends to assert, upon written motion by the People. The rule, however, does not speak to the use which may be made of such disclosures or the other material and information therein detailed. Supreme Court Rule 415(c) (Ill. Rev. Stat. 1977, ch. 110A, par. 415(c)) provides that discovery materials be used for "the purposes of conducting his side of the case" which does not appear to prohibit the People's reference herein; yet we must remember the basic purpose of a trial is the determination of truth and the purpose of the discovery rules is to prevent surprise or unfair advantage and to aid in the search for the truth. (*E.g., People v. Daniels* (1979), 75 Ill. App. 3d 35, 393 N.E.2d 667; *People v. Goodman* (1977), 55 Ill. App. 3d 294, 371 N.E.2d 168; *People v. Watkins* (1975), 34 Ill. App. 3d 369, 340 N.E.2d 92.) We must also remember that the selection of a particular defense is within the province of legal counsel. In the case at bar, the defendant did not recall the assertion of the intoxication defense in discovery and the following exchange occurred:

"Q. Well, I'm ging to ask you if you knew the answer to question 1, as filed by your attorney. What's that say?

A. Defendant may assert the affirmative defense of *intoxication*."

■■ Even though the People (Ill. Rev. Stat. 1977, ch. 110A, par. 412(a)(i)) and the defendant (Ill. Rev. Stat. 1977, ch. 110A, par. 413(d)(i)) are re-

quired to disclose the names of persons they intend to call as witnesses, the attorneys in the conduct of their cases are not required to call all of the disclosed witnesses. No unfavorable inferences may be drawn merely from the failure to call a witness so disclosed. The obligation of Supreme Court Rule 413(d) to disclose such defenses that he "may" use at trial does not and is not intended to limit the discretion of the attorney for the defendant in the conduct of the trial. Not only are theories of defense opinions of the attorney and not binding admissions of a party, they are by their nature subject to change as the case may·develop during the trial. We conclude that the theories of defense disclosed in response to discovery are not admissions of the defendant and inappropriately considered as affecting the defendant's credibility.

In the case at bar, the reference to self-defense merely altered the point in time when the implied inconsistency surfaced. The implication was not prejudicial as the defense was advanced at trial. This was not the case with the intoxication defense. By referring to the latter defense appearing in discovery materials, the People implied that defendant could have raised his ultimate defense earlier. While this clearly created the possibility of prejudice, defendant testified at length concerning the amount of alcohol he consumed prior to the stabbing. While he did not assert the defense, defendant admitted he was intoxicated but stated he nonetheless knew what he was doing. Under these circumstances, we do not find that defendant was prejudiced and hold the discovery references harmless beyond a reasonable doubt. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

The fourth and final issue presented for review is whether defendant was denied his statutory right to a proper sentencing hearing when he was sentenced to an extended term of imprisonment allegedly without the trial court specifying the reasons therefor. Section 5—8—2(a) of the Unified Code of Corrections (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—8—2) mandates that the factors enumerated in section 5—5—3.2(b) of the Code (Ill. Rev. Stat., 1978 Supp., ch. 38, par. 1005—5—3.2(b)) be found present before an extended term sentence is imposed. The factors are:

> "(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts; or
>
> (2) When a defendant is convicted of any felony and the court finds that the offense was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty."

Defendant acknowledges that his 1977 conviction for burglary is such a

factor but contends this cause should be remanded as the trial court made no finding that the conviction was the reason for the sentence. While the better practice would be such a specific reason, we note the court specifically mentioned the conviction in its commentary before sentencing. The requirement that the trial court set forth the reasons for a sentence in the record does not obligate the court to recite, and assign value to, each fact presented at a sentencing hearing. (*People v. Meeks* (1980), 81 Ill. 2d 524, 411 N.E.2d 9.) We therefore find no reason to remand this cause for reconsideration of the sentence. As the presence of one of the statutory factors is sufficient for imposition of an extended term sentence (*People v. Hamilton* (1980), 81 Ill. App. 3d 297, 401 N.E.2d 318, *appeal denied* (1980), ___ Ill. 2d ___), we do not reach the question of whether the offense was accompanied by behavior indicative of wanton cruelty.

Accordingly, the judgment of the circuit court of Rock Island County is affirmed.

Affirmed.

ALLOY and BARRY, JJ., concur.