THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* EDWARD WOODS, Defendant-Appellant.

First District (2nd Division)   No. 82—2701

Opinion filed February 28, 1984.

James A. McCarron and M. Anne Anderson, both of Law Offices of James A. McCarron, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, James S. Veldman, and Frank G. Zelezinski, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant, found guilty by a jury of one count each of rape (Ill. Rev. Stat. 1981, ch. 38, par. 11—1), armed robbery (Ill. Rev. Stat. 1981, ch. 38, par. 18—2), unlawful restraint (Ill. Rev. Stat. 1981, ch. 38, par. 10—3), armed violence (Ill. Rev. Stat. 1981, ch. 38, par. 33A—2), and home invasion (Ill. Rev. Stat. 1981, ch. 38, par. 12—11(a)(1)), was sentenced to concurrent 60-year terms on each count.

On appeal defendant assigns error to: (1) the admission of evidence concerning another charge pending against him; (2) the insufficiency of the application for an order permitting one-party electronic eavesdropping; (3) the prosecutor's remarks about reasonable doubt; (4) the impropriety of the sentence; and (5) the State's use of peremptory challenges to exclude blacks from the jury.

At trial the complaining witness testified that on September 10, 1981, while lying face down on the bed in an upstairs bedroom, she heard a sound, turned and saw a man, identified as defendant, at the top of the stairs about 10 feet away. The room was brightly lit and she stared at defendant for about five to 10 seconds. She screamed, whereupon he jumped on the bed, covered her mouth with his hand and put a knife under her neck, repeatedly telling her, "You scream I'll kill you." He stuffed her mouth with something, tied her hands behind her back, and put a pillow over her head. He announced a robbery and walked around the room. He then pulled the blanket off of her and when she struggled he hit her with his fist on the cheek. He then had intercourse with her. The telephone began ringing and he got up and asked where the jewelry and money was.

After again walking around the house, defendant tied a pillowcase around the victim's eyes, turned her over on her back, and had inter-

course with her again, biting her breasts. She could see his reflection in the television set as he went in and out of the room. He tied her feet together, after which she heard him descend the steps and the front door unlock. She untied herself and immediately telephoned her mother-in-law and the police. Downstairs, she found that the screen had been removed from the living room window and was bent up and placed next to the couch, and also found $50 missing from her purse. During the attack she sustained a black eye, facial swelling and bruises. She was taken to a hospital by police. On January 5, 1982, she identified defendant in a lineup, viewing it twice to "make sure everything was right." She had previously viewed other lineups but had not identified anyone.

Other witnesses who testified included Dr. James Fitko, emergency room physician. He examined the complaining witness on September 10, 1981, at 11 a.m. and observed abrasions on her right wrist and both breasts and a contusion to her right cheek. He took a vaginal smear. James Vantilburg, a Chicago police microanalyst who received the smear, detected the presence of spermatozoa. Richard McGrath, Chicago police evidence technician, arrived at the complaining witness' home at 11:30 a.m. on September 10, 1981, and saw that a screen had been removed from a downstairs window. He found, photographed and lifted fingerprints on the interior side molding of the windowframe and on the bent portion of the screen. Philip Montalbano, Chicago police latent fingerprint examiner, compared latent finger and palm prints found at the scene with inked impressions of defendant's finger and palm prints, and concluded that the latent prints belonged to defendant.

Joseph Saladino, investigator employed by the Cook County State's Attorney, on January 25, 1982, received an assignment "in relation to a solicitation to commit murder." He was equipped with a hidden tape recorder and met with defendant in a conference room at the Cook County Jail. Defendant, who had been led to believe that Saladino was a "hit" man, told him he had a "problem" with a witness whom he wanted "wasted." Defendant told him the first name of the witness, which was the same as that of the complainant, said that she lived on Larrabee, where the instant victim lived, and also provided her physical description. Defendant said that the witness, the victim of a robbery, could identify his voice. He wore a stocking mask during the robbery. A $3,000 fee was negotiated, to be handled by defendant's "wife" or "old lady." The actual tape subsequently published to the jury essentially corroborated Saladino's testimony.

The State rested. Defendant called no witnesses on his behalf.

At the sentencing hearing the State presented the testimony of a man and woman who had been robbed and the woman raped at gunpoint by defendant on December 19, 1981. Also testifying was a woman whose apartment was broken into by defendant on August 29, 1981. Defendant robbed her and her boyfriend, and raped and committed a deviate sexual assault upon her. The State also presented evidence of defendant's prior criminal record, which extended back to 1964. After defendant waived a hearing in mitigation, the circuit court sentenced him to an extended 60-year concurrent term on all counts.

## I

Defendant contends that the admission into evidence of other criminal charges against him, through the testimony of Investigator Saladino and his tape-recorded conversation, was reversible error. This issue was not properly preserved for review since defendant failed to include it in his post-trial motion. (See *People v. Foster* (1979), 76 Ill. 2d 365, 380, 392 N.E.2d 6.) The plain-error doctrine, in view of the very strong evidence of defendant's guilt, is inapplicable to the case at bar. (87 Ill. 2d R. 615(a); see *People v. Carlson* (1980), 79 Ill. 2d 564, 576-77, 404 N.E.2d 233.) Assuming, *arguendo*, that the error had been preserved, this contention must nevertheless be rejected.

Evidence of other crimes committed or alleged to have been committed by defendant is admissible if relevant for a purpose other than to show defendant's propensity to commit crime. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27, 389 N.E.2d 1200; *People v. Lane* (1982), 106 Ill. App. 3d 793, 801, 436 N.E.2d 704.) Such purposes include showing defendant's "guilty knowledge" or "consciousness of guilt" of the crime at issue. (*People v. Baptist* (1979), 76 Ill. 2d 19, 27; *People v. Tranowski* (1960), 20 Ill. 2d 11, 16, 169 N.E.2d 347, *cert. denied* (1962), 368 U.S. 978, 7 L. Ed. 2d 440, 82 S. Ct. 484.) An attempt by a defendant to intimidate a witness, though a separate offense, is properly admissible for this purpose (*e.g., People v. Gambony* (1948), 402 Ill. 74, 80, 83 N.E.2d 321, *cert. denied* (1949), 337 U.S. 910, 93 L. Ed. 1722, 69 S. Ct. 1045; *People v. Jones* (1980), 82 Ill. App. 3d 386, 393, 402 N.E.2d 746; *People v. Goodman* (1977), 55 Ill. App. 3d 294, 296, 371 N.E.2d 168), as is evidence that a defendant attempted to kill an eyewitness (*People v. Baptist*). The trial court is afforded considerable latitude in deciding whether to admit evidence of other crimes. (*People v. Burgin* (1979), 74 Ill. App. 3d 58, 67, 392 N.E.2d 251.) Where a proper purpose for admitting such evidence exists, as here, it is ad-

missible unless its minor probative value is outweighed by its major prejudicial effect. *People v. Bartall* (1982), 105 Ill. App. 3d 867, 872-73, 435 N.E.2d 152.

Defendant contends that his conversation with Saladino referred to a victim of another crime, not to the instant complaining witness. Therefore, the disputed evidence was not probative of his guilt here. Defendant, however, identified the prospective murder victim by using the instant victim's first name; described her physical appearance; and said the crime "went down" in a home on Larrabee. The foregoing suggests that defendant was, in fact, discussing the present crime; therefore, Saladino's testimony and the tape recording had considerable probative value in the instant case.

After the disputed evidence was admitted, the circuit court cautioned the jury to consider it only for the limited purpose of finding therein defendant's admissions of guilt or his consciousness of guilt of the instant offense. Later, the court repeated the warning by giving Illinois Pattern Jury Instruction, Criminal, No. 3.14 (2d ed. 1981). This procedure substantially reduced any potentially prejudicial impact of such evidence. (*People v. Sanders* (1981), 103 Ill. App. 3d 700, 708, 431 N.E.2d 1145.) The court did not err by admitting this evidence.

## II

■ Defendant next argues that the admission of evidence obtained by the improperly granted electronic eavesdropping was reversible error because the application for the eavesdropping order, based upon the hearsay of an unreliable declarant, was insufficient to support the order that was entered.

Eavesdropping with one party's consent does not violate the fourth amendment to the United States Constitution. (*United States v. White* (1971), 401 U.S. 745, 28 L. Ed. 2d 453, 91 S. Ct. 1122; *People v. Swimley* (1978), 57 Ill. App. 3d 116, 124, 372 N.E.2d 887, *cert. denied* (1978), 439 U.S. 911, 58 L. Ed. 2d 257, 99 S. Ct. 281.) Consequently, any restrictions placed on such one-party eavesdropping are statutory and not constitutional. (*People v. Sylvester* (1980), 86 Ill. App. 3d 186, 190, 407 N.E.2d 1002.) The statutes governing such eavesdropping are contained in article 108A of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1981, ch. 38, pars. 108A—1 *et seq.*). Defendant insists that the requirements of section 108A—4, which regulates the grounds upon which courts may authorize one-party eavesdropping, were not met in the instant case. In relevant part, section 108A—4 permits approval of eavesdropping where "there is

reasonable cause for believing that an individual is committing, has committed, or is about to commit a felony under Illinois law." (Ill. Rev. Stat. 1981, ch. 38, par. 108A—4(b).) "Reasonable cause" is present when "the totality of facts and circumstances existing at the time are sufficient to warrant the belief by a man of reasonable caution that an offense has been, is being, or will be committed." (*People v. Sylvester* (1980), 86 Ill. App. 3d 186, 194-95; see also *People v. Robinson* (1976), 62 Ill. 2d 273, 276, 342 N.E.2d 356.) In determining the existence of reasonable cause, unlike the situations involving search warrants, courts are not "unduly technical." (*People v. Sylvester* (1980), 86 Ill. App. 3d 186, 196; see also *People v. Clay* (1973), 55 Ill. 2d 501, 504-05, 304 N.E.2d 280.) An affidavit supporting an application for an eavesdropping order "need not prove beyond a reasonable doubt that a crime has been committed nor even establish a *prima facie* case." *People v. O'Dell* (1980), 84 Ill. App. 3d 359, 368, 405 N.E.2d 809.

In the case *sub judice*, the application for the eavesdropping order was made under oath by F.B.I. agent Daniel Dzwilewski, who stated that informant Harold Flynn was known to him because he had provided the agent in the past with accurate information concerning various crimes. The application stated that Flynn, incarcerated at Cook County Jail, contacted the agent and revealed that defendant asked whether Flynn knew of anyone "on the outside" who could kill a particular witness, and that payment could be made through defendant's girlfriend. Flynn said he would check with an "ex-partner" about the job, whereupon he telephoned the agent. Flynn spoke to defendant again, telling him to get the name of the witness and arranging the interview with Investigator Saladino, who was to pose as "Joe D.," Flynn's ex-partner.

An application for an eavesdropping order based upon hearsay, as here, is permitted provided there is a basis for crediting the hearsay. (*United States v. Ventresca* (1965), 380 U.S. 102, 108, 13 L. Ed. 2d 684, 688, 85 S. Ct. 741, 745; *People v. Sylvester* (1980), 86 Ill. App. 3d 186, 195.) Sufficient basis for crediting the hearsay existed here because of the detailed nature of the declaration, notwithstanding the fact that Flynn was himself in jail and may have had a motive to lie. The agent's sworn statement that he had received accurate information from Flynn in the past further enhances the declaration's credibility. (*Cf. People v. Wassell* (1983), 119 Ill. App. 3d 15, 455 N.E.2d 1100.) There was therefore no error in permitting the one-party eavesdropping.

## III

■ Defendant maintains the prosecutor improperly led the jury to conclude that reasonable doubt was merely *pro forma* in her closing rebuttal argument by stating, in effect, that the burden of proof, beyond a reasonable doubt, is present every single day in this country, hundreds of times, in murder cases, thefts, robberies and rapes; it is met every single day, as it was in this case. These and similar remarks may have the effect of lessening the importance of the State's burden of proof (see *People v. Scaggs* (1982), 111 Ill. App. 3d 633, 444 N.E.2d 674; *People v. Martinez* (1979), 76 Ill. App. 3d 280, 285, 395 N.E.2d 86). Defendant failed to object when these remarks were made, however, and his motion for a new trial did not specifically cite these remarks or explain why they amounted to error. More importantly, in view of the overwhelming evidence of defendant's guilt, the remarks at issue were harmless and were not a material factor in defendant's conviction nor did they result in substantial prejudice to defendant's right to a fair trial. *People v. Hamilton* (1980), 80 Ill. App. 3d 794, 805, 400 N.E.2d 599.

## IV

■ Defendant contends that the 60-year sentence imposed upon him for the Class X felony of which he was convicted was improper and excessive. Section 5—8—2(a)(2) of the Unified Code of Corrections (Code) provides that Class X felony sentences can be extended from 30 to 60 years, when one of the factors in aggravation set forth in section 5—5—3.2(b) of the Code is present. (Ill. Rev. Stat. 1981, ch. 38, pars. 1005—5—3.2(b), 1005—8—2(a)(2).) One such factor is whether defendant was convicted of the same or greater class felony within the past 10 years, excluding time spent in custody. (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(1).) Defendant here had been convicted of armed robbery, presently a Class X felony, in May 1974, and was paroled in June 1981, which alone supports defendant's extended-term sentence. *People v. McFarland* (1981), 93 Ill. App. 3d 136, 144, 416 N.E.2d 769.

Another factor to be considered is whether the felony for which defendant is being sentenced "was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty." (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—3.2(b)(2).) The circuit court expressly found defendant's actions to comprise such behavior. Defendant broke into the victim's home, tied and gagged her, repeatedly threatened to kill her with a knife, raped her twice, punched her in the face, bit her breasts, and finally robbed her before leaving the scene. Further, he

sought later to have the victim murdered. The circuit court, in the best position to observe the witnesses and evaluate this evidence (*People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882), did not abuse its discretion in imposing the extended sentence (*People v. La Pointe* (1981), 88 Ill. 2d 482, 492, 431 N.E.2d 344).

## V

■ Defendant's final assignment of error is that the State, through the use of its peremptory challenges, systematically excluded blacks from the jury. This contention was considered and rejected in *People v. Payne* (1983), 99 Ill. 2d 135, 457 N.E.2d 1202, which found no constitutional violation so long as there is no showing of such exclusion in case after case and the jury pool from which the jury was selected represented a fair cross-section of the community. See also *People v. Williams* (1983), 97 Ill. 2d 252, 454 N.E.2d 220.

Affirmed.

STAMOS and PERLIN, JJ., concur.