THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. SUSAN BROOKS, Defendant-Appellant.

Third District  No. 3—84—0082

Opinion filed November 30, 1984.

BARRY, J., concurring in the decision.
ALLOY, P.J., dissenting.

Robert Agostinelli and Thomas A. Lilien, both of State Appellate Defender's Office, of Ottawa, for appellant.

L. Patrick Power, State's Attorney, of Kankakee (John X. Breslin and John M. Wood, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE HEIPLE delivered the decision of the court and the following opinion:

Defendant Susan Brooks was convicted of armed violence at a bench trial in Kankakee County. She was sentenced to a mandatory minimum term of six years of imprisonment.

At trial, the defendant testified that she was at home in her trailer on the evening of September 28, 1983, when the two alleged victims pulled into her driveway. According to the defendant, she went out to their car, took a drink of their whiskey, and all three then went into her trailer. They sat down and began talking and an altercation over children's clothing ensued. According to the defendant, af-

ter approximately 15 minutes had passed one of the alleged victims stood up, as if to leave, and pulled a gun out of her pants. The defendant then grabbed her gun which was by the couch and shot the victim in the arm. According to the defendant, she did this to prevent the victim from shooting her. The defendant also denied striking the other alleged victim in the back of his head with a rifle.

Upon arrest, the defendant was given *Miranda* warnings and taken to the county detention center. At that time, the arresting officers testified, the defendant said they had "no business arresting her and that next time she would kill us all or them all." Later on at the detention center, as one of the officers attempted to quiet the defendant, she told the officer that she "did it all." After a fresh set of *Miranda* warnings, the defendant told the officer that she had hit one individual with a gun, shot another, and that "next time, she'd kill them all."

On cross-examination, the prosecutor elicited a denial that the defendant had ever made these admissions to an officer. The prosecutor continued by asking when she first mentioned that one of her victims had a gun. The defendant's objection that this was an improper attempt to impeach by means of protected post-arrest silence was overruled. It is from this alleged error that the defendant appeals.

The leading case in this area is *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240. There, the Supreme Court barred the use of defendant's post-arrest silence against him at trial. The principal focus of the opinion was that post-*Miranda* silence was "insolubly ambiguous," in that one could never be certain whether defendant's silence was, in whole or in part, an exercise of the right to remain silent.

A line of cases that developed from *Doyle* dealt with the situation where defendant made some statements to the police, but gave additional or different testimony at trial. In *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39, defendant was charged with deviate sexual assault and unlawful restraint. He originally gave the police an alibi, but defended on the basis of consent at trial. The prosecution cross-examined him on his failure to mention the victim's consent to the police. The supreme court affirmed Rehbein's conviction. The gist of the holding is that where defendant's statements at trial are wholly inconsistent with prior statements, then impeachment is proper, as with any other prior inconsistent statement.

Defendant argues that the *Rehbein* holding mandates a reversal in this case, as the statements admitting the shooting and hitting of the victims with a gun are not inconsistent with a claim of self-defense.

While this is undoubtedly true, the literal holding of *Rehbein* and its progeny has no application here.

The case of *Anderson v. Charles* (1980), 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180, significantly weakens the force of the *Rehbein* holding. There, defendant gave a story to the police which was wholly inconsistent with his story at trial. Cross-examination was directed at the defendant's failure to tell the latter version to the police. While these facts are identical to *Rehbein* in all relevant respects, the court did not tailor its holding so narrowly:

> "*Doyle* [*Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240] bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence, because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As to the subject matter of his statements, the defendant has not remained silent at all." *Anderson v. Charles* (1980), 447 U.S. 404, 408, 65 L. Ed. 2d 222, 226, 100 S. Ct. 2180, 2182.

The focus of the court in *Anderson* was clear. When a defendant who has been advised of his right to remain silent speaks, he cannot complain of impeachment which directly attacks statements made at trial which do not comport with statements given to the police.

Defendant argues that our recent decision in *People v. Timmons* (1983), 114 Ill. App. 3d 861, 449 N.E.2d 1366, is controlling. In *Timmons*, defendant was charged with delivery of a controlled substance. Upon arrest, defendant admitted the purchase of "acid," but denied delivering to anyone. At trial, an alibi defense was raised specifying defendant's whereabouts and activities at the time of the alleged delivery. The prosecutor asked defendant why he waited until trial to tell this story. We reversed and remanded due to an absence of a threshold inconsistency between trial testimony and statements given to the police.

*Timmons* is distinguishable from the case at bar. There, defendant's failure to specify the facts underlying his alibi to the police is exactly what *Miranda* and *Doyle* were designed to protect. There was complete consistency between a denial of the acts underlying the offense and an alibi. Thus, any attempt at impeachment necessarily went to defendant's silence upon arrest, as no prior inconsistent statements were made. Here, however, defendant's version as originally given was not wholly consistent with the later version, as the

additional fact of self-defense was not mentioned at first. More importantly, though, is the point raised in *Anderson*. *Miranda* and *Doyle* do not protect the defendant who chooses to speak after being warned to remain silent. Furthermore, going beyond the *Anderson* holding, defendant here actually incriminated herself after being apprised of her rights. It is indeed strange for the defendant to claim a violation of her right to a fair trial based on a *Miranda*-type error when she waived her *Miranda* rights by incriminating herself.

It appears at first that this case deviates from two factually identical First District cases (*People v. Foster* (1980), 81 Ill. App. 3d 915, 401 N.E.2d 1221; *People v. Robinson* (1976), 44 Ill. App. 3d 447, 358 N.E.2d 43). However, both cases were decided before *Anderson*. Also, *Robinson* was a case where defendant effectively remained completely silent. Caught with a smoking gun, defendant said, "I know my rights. I did it, but I'm not going to tell you why." Since Robinson's shooting of the victim was obvious, his admission was immaterial. In *Foster*, it was not entirely clear how the defendant had incriminated himself. Thus, neither case is controlling.

This is an example of rigid adherence to articulated principles without an analysis of the policies underlying them. Cases like *Miranda* and *Doyle* were designed to insure that those accused of crimes could not be convicted by their own words. *Doyle* and *Anderson* specifically enforce this right by insulating the reticent defendant from the use of this protected silence against him. However, when the accused chooses to forego this right of silence and to incriminate herself, as the defendant did here, she should not be heard to complain when the prosecutor seeks to impeach her credibility with statements whose force stems directly from the self-incrimination. On the other hand, in cases such as *Timmons*, where the story told at trial cannot be used other than to impeach the defendant for not telling it to the police immediately, the right to remain silent is unreasonably attacked. As no such negative impact is present in this example of self-inculpation, we affirm.

Affirmed.

JUSTICE BARRY, concurring in the decision:

I choose to take a more simplistic, pragmatic approach to this bench-trial case. While I agree with the result reached by my colleague, Justice Heiple, I find that the post-arrest admissions and testimony of the defendant, while inconsistent with self-defense, are not totally and directly contradictory to her story at trial, and that there-

fore it was error for the trial court to overrule the defendant's objections to the prosecutor's inquiry as to when defendant first told anyone about the victim's gun.

Initially the defendant indicated that the victim Roach was attacked at some other place, and then at trial indicated that she had lied when she said that. At trial the defendant admitted that she shot Roach. Her prior arrest record, including four prior convictions involving dishonesty, were known to the trial judge, and it is axiomatic that the trial judge need not give any credibility to her testimony. Further, the testimony of other eyewitnesses does not indicate that Roach was armed.

In this case there was substantial evidence of guilt; in fact, the evidence is overwhelming. (See *People v. Green* (1979), 74 Ill. 2d 444, 386 N.E.2d 272.) The defendant admitted the acts forming the basis for armed violence, the only crime of which she was convicted. The trial judge did not have to believe any aspects of her self-defense claim, including defendant's totally unsupported allegation that the victim Roach had a gun.

I would find the trial court's admission of evidence of defendant's post-arrest silence to have been error, but harmless beyond a reasonable doubt, and therefore not reversible.

PRESIDING JUSTICE ALLOY, dissenting:

I respectfully dissent. The critical issue is whether the defendant's statement at trial, her statement that one of the victims had a gun, is manifestly inconsistent with the statements she made after her arrest. (*People v. Beller* (1979), 74 Ill. 2d 514, 522-25, 386 N.E.2d 857; *People v. Rehbein* (1978), 74 Ill. 2d 435, 441-42, 386 N.E.2d 39, 42, *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843; *People v. Timmons* (1983), 114 Ill. App. 3d 861, 449 N.E.2d 1366.) After the arrest, defendant Brooks did not state that her victims were unarmed, or in any other way indicate or suggest that. If she had, then clearly there would be a manifest inconsistency between her trial testimony and her post-arrest statements. The record indicates, however, that the question of whether her victims were armed did not come up at all in those post-arrest statements. And, in fact, the majority does not dispute the lack of inconsistency. They accept that there is no inconsistency between the statements admitting the shooting and Brooks' subsequent claim of self-defense at trial.

Rather, the majority believes that *Anderson v. Charles* (1980), 447 U.S. 404, 65 L. Ed. 2d 222, 100 S. Ct. 2180, "significantly weakens the force of the *Rehbein* holding," which is the rule applied by the

court in *People v. Beller* and by this court in *People v. Timmons.* I do not believe that *Anderson v. Charles* has such effect upon the rulings of the Illinois Supreme Court. In *Anderson v. Charles,* the United States Supreme Court *found* the requisite manifest inconsistency. The defendant in that case made post-arrest statements indicating that he had stolen an auto off the street "about two miles from the local bus station." At trial he testified that he had stolen the auto from a tire store next to the bus station. The questions by the prosecutor focused upon that clear inconsistency and when and why the defendant changed his mind. The court found that the questions were designed to elicit an explanation of prior inconsistent statements. There is no distinction between the rules applied in *Anderson v. Charles* and those stated by our supreme court in *Rehbein* and *Beller.* The facts in *Anderson* and *Rehbein* are very similar, as are the courts' decisions. I cannot adopt the majority's construction of *Anderson,* and find that *Anderson* stands for the proposition that "[w]hen a defendant who has been advised of his right to remain silent speaks, he cannot complain of impeachment which directly attacks statements made at trial which do not comport with statements given to the police." In *Anderson,* the court applied the manifest inconsistency standard, and found the inconsistency present. The majority would apparently do away with that standard, and substitute a vague, indefinite one based upon whether post-arrest statements "comport" with trial testimony.

The issue in *Anderson* which the United States Supreme Court emphasized was whether the questions by the prosecutor were designed to draw meaning from silence or were designed for the purpose of eliciting an explanation of inconsistent statements. In the instant case, where, as the majority concedes, there were no inconsistent statements, it is difficult to conclude that the prosecutor was seeking to elicit an explanation of inconsistent statements. Rather, he was quite clearly seeking to draw attention to the fact that the defendant had not said anything previously about the victim's gun and her self-defense claim. He was seeking to draw attention to her previous silence on these matters. This was reversible error. That result, I believe, is dictated by the decisions in *Anderson v. Charles, People v. Beller, People v. Rehbein,* and *People v. Timmons.* For this reason, I respectfully dissent.